IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BENJAMIN RADFORD,

     **Plaintiffs,**

v.                                       **No. 14-cv-0334 SMV/SCY**

KAREN STOLLZNOW,

     **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Karen Stollznow's Motion to Dismiss [Doc. 14], filed on April 25, 2014.  Plaintiff responded on May 12, 2014.  [Doc. 15].  Defendant replied on May 27, 2014.  [Doc. 17].  No hearing is necessary because a ruling can be issued on the briefing.  The Court, having reviewed the Complaint [Doc. 1-2] at 1–25, the briefing, and the relevant law, and being otherwise fully advised in the premises, finds that the motion is well-taken and should be GRANTED.

## Background

Plaintiff filed his Complaint in state court on February 17, 2014.  [Doc. 1-2] at 1–25.  Defendant was served with process in Colorado, her state of residence.  [Doc. 1-1] at 3.  Plaintiff alleges that he began a personal and professional relationship with Defendant in the fall of 2008 when they met for the first time at a professional conference in Georgia.  [Doc. 1-2] at 10; [Doc. 15-1] at 3.  Plaintiff explains that he and Defendant are "prominent figures in what is known as the 'skeptics' movement."  [Doc. 1-2] at 3.   He explains the skeptics movement as follows:

> The movement, with which hundreds of thousands of people associate themselves . . . is centered on the philosophy that no assertion should be accepted as fact without proof. . . . Skeptics . . . routinely research and/or investigate a wide variety of claims for which there is insufficient scientific evidence, including alternative medicine, pseudoscience and astrology, as well as more exotic (but no less popular) subjects such as ghosts, faith healing, and unsubstantiated conspiracy theories.

*Id.*  Plaintiff (a longtime New Mexico resident) claims that between the fall of 2008 and the spring of 2010, he and Defendant (who has never been a resident of New) exchanged email messages, telephone calls, and cards and gifts by mail.  [Doc. 15-1] at 2.  Plaintiff claims that their relationship during this period was both romantic and "professional" in nature.  *Id.*  Plaintiff claims that Defendant traveled to Albuquerque, New Mexico for three or four days in November of 2008 to visit with Plaintiff and to appear on a radio program, which Plaintiff had arranged.  [Doc. 1-2] at 10; [Doc. 15-1] at 3.  Plaintiff and Defendant saw each other at professional conferences in California, Nevada, and Louisiana in 2010 and 2011.  [Doc. 1-2] at 11, 16.

Plaintiff alleges that his relationship with Defendant soured in early 2013 when he accused her of failing to pull her weight on a podcast on which they collaborated, called *Monster Talk*.  [Doc. 1-2] at 6.  Then, on February 25, 2013, Plaintiff's New-York-based employer, the Center for Inquiry ("CFI") notified him that Defendant had asked CFI to discipline Plaintiff for allegedly sexually harassing Defendant.  *Id.* at 19.  After a months' long investigation, CFI suspended Plaintiff without pay for two weeks.  *Id.* at 20.  Plaintiff claims that he was suspended because Defendant falsified the dates on certain email messages during the investigation.  [Doc. 15-1] at 6–7.  Plaintiff further claims that he "was forced to quit [*Monster Talk*] by CFI due to [Defendant's] accusations."  [Doc. 1-2] at 16.

On August 6, 2013, Defendant left a post on the guest blog of the Scientific American Mind website, entitled, "I'm Sick of Talking about Sexual Harassment." *Id.* at 20.  The blog post described an unnamed man whose "psychological abuse [of Defendant] turned physical [when] he sexually assaulted [Defendant] on several occasions." *Id.*  Plaintiff alleges that within hours of the post, he began to receive "abusive and harassing" communications, apparently from people who believed that he was the unnamed man referenced in the blog post. *Id.* at 20–21.

Plaintiff claims that other bloggers, who are not parties to this suit, also posted Defendant's claims on the internet, but these bloggers identified Plaintiff by name.  Plaintiff alleges that Defendant was feeding defamatory information about him to these other bloggers, presumably in the hopes that they would post it, which they did.  For example, Plaintiff claims that a blogger named Carrie Poppy posted correspondence between Defendant and the James Randi Educational Foundation ("JREF") on the internet.   [Doc. 15-1] at 10.   In this correspondence, Defendant identifies Plaintiff by name, reports that he sexually assaulted and harassed her, and asks JREF "for a firm commitment not to invite this predator to any future JREF function." [Doc. 1-2] at 21.  Plaintiff provides two other examples of posts—by bloggers who are not parties to this lawsuit—identifying him by name and repeating Defendant's accusations of sexual assault and harassment. [Doc. 1-2] at 21–22.

Plaintiff claims that Defendant's actions caused damage to his professional and personal reputations. [Doc. 1-2] at 3.  He asserts causes of action for defamation, fraud, and interference with beneficial contractual relations.  [Doc. 1-2] at 23–24.  Plaintiff claims that his damages are in the millions of dollars and that he should be awarded punitive damages. *Id.* at 23, 25.

Defendant moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or, alternatively, for improper venue.  [Doc. 14].  She claims that she does not have sufficient minimum contacts with New Mexico to confer personal jurisdiction and that venue is not proper in the District of New Mexico.  [Doc. 14] at 1–2.

### Standard for Personal Jurisdiction

When a defendant challenges the court's personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating that jurisdiction exists.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  In the preliminary stages of litigation, this "burden is light[, and p]rior to trial, the plaintiff is only required to establish a prima facie showing of [personal] jurisdiction." *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992).  The plaintiff may make the required prima facie showing by coming forward with facts, via affidavit or other written materials that would support jurisdiction over the defendant if true.  *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).  Only the well-pleaded facts of a plaintiff's complaint, however, as opposed to mere conclusory allegations in pleadings or other materials, must be accepted as true.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  Moreover, if the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor.[1]  *Wenz*, 55 F.3d at 1505.

The Fourteenth Amendment's Due Process Clause requires that a defendant be subject to a court's personal jurisdiction before a judgment can be rendered against her.  *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 291 (1980).  "To obtain personal jurisdiction over a

---

[1] In this case, as a matter of personal jurisdiction, the parties do not dispute the facts.  Rather, they dispute whether the facts, even if true, are sufficient to confer personal jurisdiction.  *See* [Docs. 14, 17].

non-resident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995).  New Mexico's long-arm statute is coextensive with the Fourteenth Amendment's Due Process Clause, and thus, if jurisdiction is permitted under the Due Process Clause, it also is authorized by the long-arm statute. *Fireman's Fund Ins. Co. v. Thyssen Mining Constr.*, 703 F.3d 488, 492 (10th Cir. 2012).[2]

A court may assert personal jurisdiction over a defendant only if the defendant has sufficient "minimum contacts" with the forum state and if subjecting the defendant to the court's jurisdiction will "not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945) (internal quotation marks omitted).  "[T]he 'minimum contacts' inquiry principally protects the liberty of the non-resident defendant, not the interests of the plaintiff." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 291–92).  The determination of whether a non-resident defendant has minimum contacts sufficient to support a court's exercise of personal jurisdiction "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden*, 134 S. Ct. at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 456 U.S. 770, 775 (1984)).  The "defendant's conduct and connection with the forum State [must be] such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.

---

[2] Personal jurisdiction can be general or specific.  Here, Plaintiff does not argue that the Court has general jurisdiction over Defendant based on "continuous and systematic general business contacts" with New Mexico. [Doc. 15] at 9; *TH Agric. & Nutrition v. ACE Eur. Grp. Ltd.*, 488 F.3d 1282 (10th Cir. 2007) (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984)); *see* [Doc. 24] at 2–3 (outlining Defendant's contacts with Plaintiff).  Thus, the dispute here is whether the Court has specific jurisdiction over Defendant.

A defendant may reasonably anticipate being subject to suit in the forum state if "the defendant purposefully avail[ed her]self of the privilege of conducting activities within the forum State." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 109 (1987) (internal quotation marks omitted). Furthermore, the litigation must "result[] from alleged injuries that arise out of or relate to those activities." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (internal quotation marks omitted). In other words, the plaintiff's cause of action must "arise directly from a defendant's forum-related activities." *Id.* "Specific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov*, 514 F.3d at 1078. Even a single phone call or letter may be sufficient to support jurisdiction, if it represents an attempt by the defendant to purposefully avail herself of the privileges associated with conducting business in the forum state. *See Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418−19 (10th Cir. 1988). Generally, the contacts must be commercial in nature because non-commercial contacts do not evidence purposeful availment of a state's laws and protections. *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 97 (1978).

A seminal case on minimum contacts is *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, a California actress brought a libel suit in California state court against a reporter and an editor over an article about her in the National Enquirer. The defendants worked for the paper—a national newspaper with a California circulation of roughly 600,000—at its headquarters in Florida. The Court held that California's assertion of jurisdiction over the defendants was consistent with due process.

The defendants had relied on phone calls to "California sources" for the information in their article; they had written the story about the plaintiff's activities in California; they had caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the state; and the brunt of that injury had been suffered by the plaintiff in that state. 465 U. S. at 788–89.  That is, the injury to the plaintiff's reputation in the estimation of the California public connected the defendants' conduct to *California*, not just to a plaintiff who lived there.  *Walden*, 134 S. Ct. at 1124 (interpreting *Calder*).  "In sum, California [wa]s the focal point both of the story and of the harm suffered."  *Calder*, 465 U. S. at 789.  Jurisdiction over the defendants was "therefore proper in California based on the 'effects' of their Florida conduct in California." *Id.*

The Tenth Circuit Court of Appeals has distilled *Calder* to its essence and created a three-pronged test for determining "purposeful direction."  *Dudnikov*, 514 F.3d at 1072.  As a helpful illustration, the court has explained how each prong applies to the facts of *Calder*:

> **(a) an intentional action** (writing, editing, and publishing the article), **that was (b) expressly aimed at the forum state** (the article was about a California resident and her activities in California; likewise it was drawn from California sources and widely distributed in that state), **with (c) knowledge that the brunt of the injury would be felt in the forum state** (defendants knew [the plaintiff] was in California and that her career revolved around the entertainment industry there).

*Id.* (emphases added).  Here, the first and third factors are not presently at issue.  *See* [Docs. 14, 15, 17].  It is the second factor that is in dispute.

To determine whether a defendant expressly aimed her actions at the forum state, courts look to "the defendant's contacts with the *forum State* itself, not the defendant's contacts with persons who reside there."  *Walden*, 134 S. Ct. at 1122 (emphasis added).  "[D]efamatory

postings [on the internet] may give rise to personal jurisdiction if they are directed specifically at a forum state audience or otherwise make the forum state the focal point of the message." *Shrader v. Biddinger*, 633 F.3d 1235, 1244 (10th Cir. 2011). Knowingly targeting a forum resident, however, is not enough to meet the second *Dudnikov* factor or to confer personal jurisdiction. *Id.*; *see World-Wide Volkswagen*, 444 U.S. at 295 (holding that, although "an automobile is mobile by its very design and purpose," thus indicating that it is foreseeable that a particular automobile may cause injury in a forum state, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause"); *Dudnikov*, 514 F.3d at 1077 (holding that a plaintiff "must establish . . . not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook intentional actions that were expressly aimed at that forum state."). Ultimately, the determination of whether a non-resident defendant has minimum contacts sufficient to support a court's exercise of personal jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S. Ct. at 1121 (internal quotation marks omitted).

## Analysis

Defendant does not have sufficient minimum contacts with New Mexico to confer personal jurisdiction over her for three related—and independently sufficient—grounds. First, the contacts alleged by Plaintiff are not commercial in nature and are related to Plaintiff himself, rather than to the State of New Mexico. Second, the fact that Defendant knew that her allegedly tortious conduct would cause harm to a New Mexico resident is not sufficient for jurisdictional purposes. Finally, the allegedly tortious conduct does not connect Defendant to New Mexico

and, thus, does not satisfy due process.   Accordingly, this Court does not have personal jurisdiction over Defendant.

### I.      The contacts alleged by Plaintiff are not commercial in nature and do not connect Defendant to the State of New Mexico.

First, Plaintiff alleges that during the course of a multiple-year personal and "professional" relationship with Plaintiff, Defendant sent more than one thousand emails, telephone calls, letters, cards, and gifts to Plaintiff in New Mexico.  [Doc. 15-1] at 2.  Plaintiff further alleges that Defendant physically visited the state once in 2008.  *Id.* at 3–4.  Plaintiff explains that Defendant's many contacts with him in New Mexico were personal in nature and arose from a romantic, personal relationship.  He also alleges that at least some of the contacts were "professional" in nature because the parties shared "ideas for articles, professional collaboration, advising and commenting on each other's work, and the like."  *Id.* at 2.

For example, in 2008, when Defendant traveled to New Mexico to visit Plaintiff for "a long weekend," Plaintiff arranged for Defendant to appear on a radio program with him and to meet a New Mexico resident, Ken Frazier, in order to advance her career.  [Doc. 1-2] at 10; [Doc. 15] at 4.  In 2008, Defendant mailed a book that she had authored to Plaintiff in New Mexico for his professional review and comment.  [Doc. 15-1] at 2, 5.  In February of 2009, Plaintiff contributed to a magazine called THE SKEPTIC that Defendant edited.  *Id.* at 2–3. Defendant emailed Plaintiff in July of 2009 suggesting that the two take a trip together combining work and romance.  *Id.* at 4–5.  At Plaintiff's request, in 2010, Defendant contributed a piece of writing to a book that Plaintiff was authoring, which was later published by a New Mexico-based publisher called Rhombus Books.  *Id.* at 5.  In January of 2011, Plaintiff emailed Defendant and informed her that he had referenced her research in a magazine article.

*Id.*  In March of 2012, Plaintiff emailed Defendant and offered to advise her on book indexing a

book that she was writing.  *Id.*

      These contacts may relate to the professions and careers of the parties, but they do not

evidence any *commercial* relationship or obligation between them.  Nor does Plaintiff allege that

any commercial relationship ever existed or was contemplated.  Plaintiff explains that he

provided his professional assistance and advice to Defendant "freely because [he] thought she

was a good researcher and writer and because [they] were involved together in a romantic

relationship."  [Doc. 15-1] at 5.  Plaintiff argues that whether Defendant's contacts arose from a

personal relationship or a commercial one should not matter.  He argues that:

> [i]f this case had involved solely a business tort, arising from a
> from a failed business relationship that involved analogous
> contacts with New Mexico, it is unlikely that [Defendant] would
> even have bothered to file a motion to dismiss for lack of
> jurisdiction.  The fact that [Defendant] acted to harm a man who
> was a former lover as well as a professional colleague should not
> change the analysis.  There is no case that holds that it should.

[Doc. 15] at 17.  Plaintiff is incorrect.

      Contacts in a commercial context are treated differently than those in a non-commercial

context for purposes of determining personal jurisdiction.  *E.g., Kulko*, 436 U.S. at 97 ("Th[is

case] . . . arises, not from the defendant's commercial transactions in interstate commerce, but

rather from his personal, domestic relations.  It thus cannot be said that [defendant] has sought a

commercial benefit from solicitation of business from a resident of [the forum state] that could

reasonably render him liable to suit in state court[.]").  This distinction makes sense because

commercial contacts can evidence a defendant's "purposeful availment" of the forum state's

laws and protections.  *See Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1167–68 (10th Cir.

2011) (finding that an employment contract showed the defendant's purposeful availment of the forum state's law and protections); *cf. Burger King*, 471 U.S. at 473 (Similarly, "with respect to interstate contractual obligations, [the Supreme Court has] emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.") (internal quotation marks omitted).

In contrast, contacts arising from a personal, non-commercial relationship generally do not evidence a foreign party's intention to purposefully avail herself of a forum state's civil laws and protections. *Kulko*, 436 U.S. at 94 ("A father who agrees, in the interests of family harmony and his children's preferences, to allow them to spend more time in California than was required under a separation agreement can hardly be said to have 'purposefully availed himself' of the 'benefits and protections' of California's laws."); *Swafford v. Avakian*, 581 F.2d 1224, 1227 (5th Cir. 1978) (holding that the defendant's love letters and phone calls to a romantic partner in the forum state were distinct from commercial communications and did not confer personal jurisdiction over the defendant in the breach-of-contract-to-marry suit because the contacts evidenced no intent to obtain, nor expectancy of receiving, a corresponding benefit from the forum state); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 485 (5th Cir. 2008) (holding that the defendant Commissioner of the Arizona Department of Real Estate had not purposefully availed herself of the benefits of Texas law and had not engaged in commercial transactions for a commercial benefit in Texas when she attempted to enforce Arizona law by sending a cease-and-desist letter to the plaintiff in Texas because "[Under *Kulko*,] the absence of 'commercial transactions in interstate commerce' in which a defendant 'sought a commercial

benefit' precluded an analogy to commercial activity cases as a basis for assertion of personal jurisdiction); *City of Va. Beach v. Roanoke River Basin Ass'n*, 776 F.2d 484, 488 (4th Cir. 1985) (holding that the Governor of North Carolina's participation in hearings conducted in Virginia by the Army Corps of Engineers related to a dispute with a Virginia city was not an invocation of benefits and protections of Virginia law sufficient to subject the Governor to service under Virginia's long-arm statute).

As the Supreme Court has recently reiterated, the jurisdictional analysis asks about "the defendant's contacts with the forum State, not [her] contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. "[T]he plaintiff cannot be the only link between the defendant and the forum. . . . Due process requires that a defendant be haled into court in a forum State based on [her] own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts [s]he makes by interacting with other persons affiliated with the State." *Id.* at 1122–23 (quoting *Burger King*, 471 U. S. at 475). A defendant's contacts in a commercial—but not personal—context evidence the *quid pro quo* required for specific personal jurisdiction. *See generally Dudnikov*, 514 F.3d at 1078.

Plaintiff cites no authority whatsoever for his position that non-commercial contacts, such as those at issue in this case, can confer personal jurisdiction over Defendant. Nor does Plaintiff argue that Defendant's contacts evidence purposeful availment of the laws and protections of the State of New Mexico. The Court is not convinced that Defendant's contacts with Plaintiff were sufficient to confer personal jurisdiction over her.

The underlying question is whether the "defendant's conduct and connection with the forum State [were such that she] should reasonably anticipate being haled into court there."

*World-Wide Volkswagen*, 444 U.S. at 297.  The contacts described by Plaintiff do not indicate that Defendant was engaged in a *quid pro quo* with New Mexico.  *See Dudnikov*, 514 F.3d at 1078.  They do not constitute purposive conduct directed at New Mexico.  They are not commercial in nature; they are very clearly personal in nature.  The contacts described by Plaintiff do not show that Defendant purposefully availed herself of the privileges associated with conducting business in New Mexico.  These contacts paint an entirely different picture. *See, e.g.*, [Doc. 15-1] at 2–3 ("Ben, let's go away together somewhere.  Let's do an investigation somewhere bizarre and have a crazy couple of days tackling local lore and our evenings tangled in each other.").  The fact that the parties—who were romantic partners and colleagues— discussed and assisted each other with work-related endeavors is not enough to trigger the jurisprudence of minimum contacts in the *commercial* context.  The Court finds that the contacts described by Plaintiff are insufficient to confer personal jurisdiction over Defendant.

II.    **The fact that Defendant knew that her allegedly tortious conduct would cause harm to a New Mexico resident is not sufficient for jurisdictional purposes.**

Second, Plaintiff argues that Defendant "purposefully directed her conduct toward New Mexico, with full knowledge that [Plaintiff] is a resident of New Mexico and that the effects of her tortious actions would be felt in New Mexico." [Doc. 15] at 11.  Plaintiff relies on *Calder*, 465 U.S. 783, to argue that:

> [Defendant] maliciously targeted [Plaintiff], a resident of New Mexico. . . . [Defendant]'s allegations of sexual harassment and sexual assault stem from her relationship with [Plaintiff] while he was at his home in New Mexico or while they were communicating to and from his New Mexico home.  [Defendant] published a statement that she "knew would have a potentially devastating impact" upon [P]laintiff in New Mexico." *Calder,* 465 U.S. at 789.  That she published one of her malicious statements on

> the Internet is of little consequence when viewed in concert with
> the rest of her conduct.

[Doc. 15] at 11.  Plaintiff seems to acknowledge that the allegedly defamatory statements did not

reach New Mexico in particular but, instead, "reached a national, or even international,

audience." *Id.* at 10.  The Court is not persuaded because Plaintiff misconstrues the reasoning in

*Calder*:

> The crux of *Calder* was that the reputation-based "effects" of the
> alleged libel connected the defendants to California, not just to the
> plaintiff.  The strength of that connection was largely a function of
> the nature of the libel tort.  However scandalous a newspaper
> article might be, it can lead to a loss of reputation only if
> communicated to (and read and understood by) third persons.
> Accordingly, the reputational injury caused by the defendants'
> story would not have occurred but for the fact that the defendants
> wrote an article for publication in California that was read by a
> large number of California citizens.  Indeed, because publication to
> third persons is a necessary element of libel, the defendants'
> intentional tort actually occurred *in* California.  In this way, the
> "effects" caused by the defendants' article—*i.e.,* the injury to the
> plaintiff's reputation in the estimation of the California public—
> connected the defendants' conduct to *California*, not just to a
> plaintiff who lived there. That connection, combined with the
> various facts that gave the article a California focus, sufficed to
> authorize the California court's exercise of jurisdiction.

*Walden*, 134 S. Ct. at 1123–24 (internal citations omitted).  Here, Plaintiff does not allege that

any defamatory statement *by Defendant* was communicated to—much less read and understood

by—anyone in New Mexico other than Plaintiff himself.  Rather, Plaintiff alleges that the

statements at issue were communicated to his employer in New York.  He further alleges that

Defendant's statements were communicated to unnamed individuals at JREF and to certain

bloggers (i.e., Carrie Poppy, P.Z. Myers, and Joe Anderson, *see* [Doc. 1-2] at 21–22), but their

citizenship is not mentioned.  The gist of Plaintiff's argument is that Defendant knew she was

14

defaming a New Mexico resident and, indeed, Plaintiff suffered harm in New Mexico.  Although

his allegations connect Defendant to *Plaintiff*, they fall short of connecting Defendant to

*New Mexico*.

Plaintiff's arguments—that Defendant targeted a resident of New Mexico, that the

allegedly libelous statements "stem from her relationship with [Plaintiff] while he was at his

home in New Mexico or while they were communicating to and from his New Mexico home,"

and that Defendant knew that her actions would affect a New Mexico resident—miss the mark.

None of the challenged conduct has anything to do with New Mexico itself.  Rather, the

challenged conduct hinges on Plaintiff.  This is not sufficient to confer personal jurisdiction.  *See*

*Walden*, 134 S. Ct. at 1125–26 (holding that a defendant's knowledge that his actions would

affect a forum resident did not confer personal jurisdiction).

### III.     The allegedly tortious conduct does not connect Defendant to New Mexico and, thus, does not satisfy due process.

To confer personal jurisdiction, the litigation must "result[] from alleged injuries that

arise out of or relate to those activities."  *Intercon*, 205 F.3d at 1247 (internal quotation marks

omitted).  In other words, the plaintiff's cause of action must "arise directly from a defendant's

forum related activities."  *Id.*  For example, in *Shrader*, the Tenth Circuit Court of Appeals found

that there was an insufficient connection between the defendants, the litigation, and the forum

state to sustain personal jurisdiction over the defendants.  633 F.3d at 1248.

In *Shrader*, the court of appeals applied the three-pronged purposeful direction test from

*Dudnikov* to a case arising from an allegedly defamatory post on the internet.  *Shrader*, 633 F.3d

at 1239−40.  There, an author of books and courses for market traders had partnered for a time

with one of the defendants.  *Id.* at 1237–38.  However, later that defendant voiced concerns over

the plaintiff's work.  *Id.* at 1238.  The defendant briefly explained why the two had parted ways

in an email he forwarded to his customer list, which included thousands of customers.  *Id.*

at 1238, 1248.  One of those customers posted that email on an internet-based traders' forum

called Wave59.  *Id.* at 1238.  After the plaintiff complained to the operators of Wave59, the

email was not immediately removed.  *Id.*   The plaintiff then sued his former partner, the

individual who posted the email to Wave59, and the operators of Wave59 for defamation and

other claims.  *Id.* at 1237–38.

The Tenth Circuit held that "posting allegedly defamatory comments or information on

an internet site does not, without more, subject the poster to personal jurisdiction wherever the

posting could be read (and the subject of the posting may reside)."  *Id.* at 1241.  To determine

whether there is "more" beyond the post, "courts look to indications that a defendant deliberately

directed its message at an audience in the forum state and intended harm to the plaintiff

occurring primarily or particularly in the forum state."  *Id.*  In *Shrader*, the court found that there

was no connection between any defendant and the forum state, Oklahoma—other than the

plaintiff.  Neither the audience nor the content of the email at issue was particularly related to

Oklahoma.  The internet forum to which the email was posted was not directed at an Oklahoma

audience.  The plaintiff's work itself was not tied to Oklahoma.  *Id.* at 1244.  Nor was the

plaintiff's customer base or reputation particularly tied to Oklahoma; rather his work was

marketed and sold worldwide.  *Id.* at 1244.  The plaintiff produced his materials in Oklahoma but

only because "he happened to live there."  *Id.* at 1245.  The court acknowledged that the plaintiff

"suffered harm in Oklahoma in the sense that he incurred harm and resided in Oklahoma when

he did so."  However, there was an insufficient connection between the defendants, the litigation, and Oklahoma to confer personal jurisdiction.  *Id.* at 1245.

The instant case is similar to *Shrader*.  Here, Plaintiff alleges that Defendant defamed him to his employer in New York.  He further alleges that she fed defamatory information to others (with no particular connection to New Mexico) in the hopes that they would repost the information on the internet (but not necessarily to a New Mexico audience), which they did.  Additionally, he alleges that Defendant perpetrated a fraud on his New York employer by changing dates on certain emails that he likely sent to her from New Mexico.  He alleges that she tortiously interfered with his employment contract with his New York employer.  He also indicates that she attempted to interfere with other contracts for speaking engagements but he does not allege that any such contracts or work had any particular connect to New Mexico.  Like the allegations in *Shrader*, here, the alleged torts in no way connect Defendant to New Mexico.

With respect to Plaintiff's allegedly damaged reputation—like the allegedly damaged reputation of the plaintiff in *Shrader*—here, the Court finds no particular connection to New Mexico.[3]  For example, Plaintiff explains that the skeptics community's communications are "centered" in the internet, not particularly in New Mexico.  [Doc. 1-2] at 5.  In fact, the skeptics community is not alleged to have any particular connection to New Mexico.  All of the skeptics conferences described by Plaintiff occurred in other states.  Plaintiff does claim that he has "developed a public persona within the local media community [presumably referring to

---

[3]  Plaintiff also alleges that he suffered damages in New Mexico because Defendant's tortious conduct caused Plaintiff's employer to suspend him without pay for two weeks.  Plaintiff explains that he "felt the impact of going without pay entirely in New Mexico, as he exclusively received his pay in the state and paid his bills within the state."  [Doc. 15] at 6.  However, these allegations do not connect Defendant to New Mexico.  The only reason Plaintiff receives his CFI paycheck in New Mexico is because he happens to live here.  *See Shrader*, 633 F.3d at 1245 (finding that the plaintiff's reputation was not connected to the forum state other than by the fact that he "happened to live there.").

17

New Mexico]" and has also made media appearances in Albuquerque.   [Doc. 15] at 3;

[Doc. 15-1] at 2.  He also speculates that his friends and family in New Mexico have "certainly"

read on the internet about his being accused of sexual harassment.  [Doc. 15-1] at 9.  However,

any damages Plaintiff suffered to his professional reputation are not particular to New Mexico.

Rather, Plaintiff reports that he speaks at universities and conferences "across the country."

[Doc. 1-2] at 4; [Doc. 15-1] at 2.  Plaintiff performs freelance work for numerous media and

news outlets that have no particular connection to New Mexico, such as Discovery News, CNN,

the Learning Channel, the Discovery Channel, the History Channel, and National Geographic.

[Doc. 15-1] at 2.  Because the tortious conduct alleged by Plaintiff is not connected to New

Mexico, and because Plaintiff's alleged damages are not particularly connected to New Mexico

itself, the Court finds that the Plaintiff's causes of action and alleged injuries do not connect

Defendant to New Mexico.

## Conclusion

Defendant does not have sufficient minimum contacts with New Mexico to confer

personal jurisdiction over her.  First, the contacts alleged by Plaintiff are not commercial in

nature and are related to Plaintiff himself, rather than to the State of New Mexico.  Second, the

fact that Defendant knew that her allegedly tortious conduct would cause harm to a New Mexico

resident is not sufficient for jurisdictional purposes.  Finally, the allegedly tortious conduct does

not connect Defendant to New Mexico.

Because the Court finds that Defendant lacks sufficient minimum contacts to confer

personal jurisdiction, the Motion will be granted on that ground.  Thus, the Court need not

proceed to the question of traditional notions of fair play and substantial justice, *see Dudnikov*, 514 F.3d at 1080, nor to the question of venue.

**IT IS THEREFORE ORDERED, ADJUGED, AND DECREED** that Defendant Karen Stollznow's Motion to Dismiss [Doc. 14] is **GRANTED**. This action is **DISMISSED without prejudice** for lack of personal jurisdiction over Defendant Stollznow.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**